816 A.2d 117

**Billy Jean COBRAND, et al.,**

v.

**ADVENTIST HEALTHCARE, INC.**

**No. 0076, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Feb. 5, 2003.

John R. Sutherland (Kristen A. Brinster and Sutherland & Brinster, P.A., on the brief), Columbia, for appellants.

Eric Rhoades (Armstrong, Donohue, Ceppos & Vaughan, Chartered, on the brief), Rockville, for appellee.

Argued before JAMES R. EYLER, BARBERA, and SHARER, JJ.

SHARER, Judge.

Appellants, Billy Jean Cobrand and Kenneth Neville Rocke, Jr., on behalf of their minor child, Kenneth Neville Rocke, III, have noted this appeal after the Circuit Court for Prince George's County granted appellee's (Adventist Healthcare, Inc.) motion to transfer venue to Montgomery County.

After having previously looked "at everything else in the case," the court focused on the convenience of eighteen poten-

tial lay witnesses, and found Montgomery County to be the "more appropriate venue." Appellants contend that the circuit court applied an incorrect legal standard by considering only the convenience of prospective lay witnesses (to the exclusion of other factors), and by applying a so-called preponderance of the evidence standard to the motion to transfer.

Appellants have raised three questions for our review, which we have fused into one question, for simplicity and clarity:

Did the circuit court err in granting the defendant's motion to transfer venue?

We answer in the negative, and affirm the decision of the circuit court.

## FACTUAL and PROCEDURAL HISTORY

Appellants, Billy Jean Cobrand and Kenneth Neville Rocke, Jr., are the parents of Kenneth Neville Rocke, III, who was born on April 29, 1996, at the Washington Adventist Hospital, which is located in Takoma Park, Montgomery County, Maryland. Washington Adventist Hospital is owned and operated by appellee, Adventist Healthcare, Inc., which maintains its principal place of business in Montgomery County.

On April 19, 2001, the appellants filed a complaint in the Circuit Court for Prince George's County against appellee,[1] alleging negligent post-natal care of their son at Washington Adventist Hospital. The underlying facts of the alleged medical negligence, while presumably in dispute, are not at issue in this appeal. Nevertheless, in the context of appellee's motion to transfer, several aspects of the underlying facts (i.e., the location of hospital, the residence of the parties, residence of witnesses, etc.) are of significance.

On July 20, 2001, Adventist Healthcare filed a motion to transfer the case from Prince George's County to Montgomery County on the "basis of *forum non conveniens,* pursuant to Maryland Rule 2–327(c)." Appellants answered, opposing the

---

1. The complaint named other defendants, none of whom are parties to this appeal.

motion to transfer, asserting that Adventist was attempting to defeat their right, as plaintiffs, to have their choice of forum. Following the filing of their opposition, the circuit court conducted a status conference on December 12, 2001.

The status conference was conducted by the Hon. William D. Missouri, in chambers. No record was made of the conference, but the parties agree that (1) all participating parties were heard at the conference; and (2) counsel for Adventist Healthcare was instructed by Judge Missouri to identify all staff members of Washington Adventist Hospital, excluding physicians, who had any involvement in the care of Kenneth Neville Rocke, III, and who were likely to be called as witnesses, and to provide the address and county of residence for such person(s) to the court. Judge Missouri excluded prospective expert witnesses from the exercise.

Counsel complied with the court's directive and identified eighteen staff members of Washington Adventist Hospital, using the child's medical records as the source. The name, address, and county of residence (where capable of determination) of each employee was submitted to the court as a supplement to Adventist's motion for transfer. Of the eighteen prospective witnesses, eight had home addresses in Montgomery County, one in Prince George's County, one in Howard County, one in Baltimore County (but who was later determined by appellants to live in Montgomery County), one in Charles County, one in Calvert County, one in Talbot County, and one in Fairfax County, Virginia. The residences of the other three were unable to be determined.

Appellants, concerned that looking only at the county of residence would create an incomplete picture on the question of convenience, filed a supplemental motion that detailed the driving distance and average driving time from each witness's home to Rockville and Upper Marlboro, where the Montgomery and Prince George's circuit courts, respectively, are located.[2] According to appellants' supplemental information, the

---

**2.** Appellants calculated the driving distance and average driving time from data provided on MAPQUEST, an internet database found at

cumulative mileage and driving time to Upper Marlboro for the fifteen known witnesses was 478.59 miles and 651 minutes respectively, whereas the distance and time to Rockville was 377.73 miles and 550 minutes respectively. Appellants take the position that the differences in time and distance are insignificant.

On February 14, 2002, the court held a hearing on the transfer motion. During that hearing, appellants proffered the following: Billy Jean Cobrand and Kenneth Rocke, Jr., did not reside together; Kenneth, Jr., lived temporarily with his father in Prince George's County; Billy Jean lived temporarily with her mother in Montgomery County; Kenneth, III, spent time at both addresses; and they "plan[ned] to buy a house in the Upper Marlboro area, in Prince George's County in the near future," because they "feel more comfortable there and [they] cannot afford a home in Montgomery County." [3] After hearing argument from both sides, the court granted the motion to transfer by stating:

> Okay. I—you're absolutely right. When I had the meeting in chambers, I told counsel I had, I had looked at everything else in the case. I needed to know where the witnesses reside, and I told you to stay away from experts because I don't consider experts as being disadvantaged, regardless of where they have to travel. They're experts and they have chosen that as part of their profession, that testifying as experts in cases is something that is desirable and, obviously, is also necessary for the transaction of court business. But the experts have made their decision as to what they are going to do. It's the person who is not a "professional witness" that I am concerned about.

---

*http://www.mapquest.com.* Neither the appellee nor the court objected to the research source.

**3.** It is not clear whether the court considered the speculative home purchase in Prince George's County, as the appellee argued against considering such information. At oral argument, counsel for appellants advised that the "comfort level" consideration was based upon socio-economic factors.

I'm concerned about the travel of those individuals who find themselves brought to court to testify as a part of the duties that they have in working wherever. And the issue of the—of Adventist system having other entities within the county in which they do business is really of no moment because the issue of jurisdiction is, is not one that's really before the Court and the issue of venue is not before the Court insofar as it being an improper venue, because I think it is a proper venue.

The issues are nonconvenience,[sic] whether it's more convenient for these matters to be tried in the Circuit Court for Montgomery County than it is to be tried in this venue. And looking at it, I consider whether a person living in Howard County to be equivalent to the Montgomery County folks. Looking at that, we have two people, excluding the Prince George's County residue, [sic] that lives in a venue other than Montgomery or Howard County, you know, that's up on that end of the state. And those folks who live in Owings and one who lives in Judge Bill Horne's county, Talbot County on the Eastern Shore. But other than that, the majority of the folks live in closer proximity to the courthouse in Montgomery County, except for the individual that lives on Good Luck Road. And obviously, that person lives closer to Upper Marlboro than they do to 50 Judiciary Square in Rockville.

*　　*　　*　　*　　*　　*

... Well, [APPELLANTS' COUNSEL], you're going to have an opportunity to tell that to the proper court. Sir, this matter is hereby transferred to the Circuit Court for Montgomery County pursuant to Venue Rules. I find it to be a more appropriate venue that [sic] Prince George's County at this juncture.

As we have noted, appellants glean from Judge Missouri's comments in granting the motion that he relied too heavily on the convenience consideration, and did not give adequate weight to other appropriate factors.

## STANDARD of REVIEW

 We review a trial court's decision to transfer a case to another venue, pursuant to Md. Rule 2–327(c), under an abuse of discretion standard. "When determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, *a court is vested with wide discretion.*" *Odenton Dev. Co. v. Lamy,* 320 Md. 33, 40, 575 A.2d 1235 (1990) (citations omitted) (emphasis added); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (noting that "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court ... [and] may be reversed only when there has been a clear abuse of discretion ....") (quoted in *Urquhart v. Simmons,* 339 Md. 1, 17, 660 A.2d 412 (1995)). An abuse of discretion is said to occur "where no reasonable person would take the view adopted by the trial court, or when the court acts without reference to any guiding rules or principles." *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110 (1997) (quoting *North v. North,* 102 Md.App. 1, 13, 648 A.2d 1025 (1994)) (internal citations, alterations, and quotations omitted). Accordingly, when reviewing a motion to transfer, a "reviewing court should be reluctant to substitute its judgment for that of the trial court." *Wagner v. Wagner,* 109 Md.App. 1, 52, 674 A.2d 1 (1996), *cert. denied,* 343 Md. 334, 681 A.2d 69 (1996).

## DISCUSSION

### *Did the circuit court err in granting the defendant's motion to transfer venue?*

We first review whether the grant of a motion to transfer is immediately appealable, and also whether venue was appropriate in either Prince George's or Montgomery counties.

 The grant of a motion to transfer is an immediately appealable final judgment, whereas the denial of such a motion is not. *Brewster v. Woodhaven Bldg. & Dev., Inc.,* 360 Md. 602, 615–16, 759 A.2d 738 (2000). Because appellants chal-

lenge the grant of appellee's motion, this case is properly before us on appeal.

The venue of a civil action is determined by §§ 6–201 to 6–203 of the Courts and Judicial Proceedings Article of the Maryland Code. Pursuant to § 6–201, "a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation." Md.Code Ann., Cts. & Jud. Proc. § 6–201 (2002 Repl.Vol.) Here, it is undisputed that appellee "carries on a regular business," in both Prince George's County and Montgomery County. Thus, even though Adventist Healthcare's principal place of business is in Montgomery County, venue is proper in either county.[4]

Even though venue may be proper in one jurisdiction, a court has the discretion to transfer actions to another competent jurisdiction pursuant to the *forum non conveniens* doctrine circumscribed in Md. Rule 2–327(c), which provides:

> On motion of any party, the court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice.

Thus, there are two basic factors to be considered by the court in ruling on a motion to transfer: convenience and the interests of justice, each with particularized sub-parts that have grown in the case law.[5] In three recent cases, the Court of Appeals has reviewed the discretion afforded trial court judges in motions to transfer under Rule 2–327(c). *See Leung*

---

4. Even if appellee did not "carry on a regular business" in Montgomery County, venue would be appropriate in that county because Adventist maintains its principal corporate offices in Rockville (Md.Code Ann., Cts. & Jud. Proc. § 6–201(a) (2002 Repl.Vol.)), and because the cause of action arose at the hospital in Takoma Park (Md.Code Ann., Cts. & Jud. Proc. § 6–202(8)).

5. As discussed *infra*, the "convenience" factor requires a court to review the convenience of the parties and witnesses. The "interests of justice" factor requires a court to weigh both the private and public interests; the public interests being composed of "systemic integrity and fairness." *See Odenton, supra*, 320 Md. at 40, 575 A.2d 1235.

*v. Nunes*, 354 Md. 217, 729 A.2d 956 (1999); *Urquhart, supra*, 339 Md. 1, 660 A.2d 412; *Odenton, supra*, 320 Md. 33, 575 A.2d 1235.

In *Odenton*, the first of the three, the Court adopted a Supreme Court balancing test to determine whether transfer to a more convenient venue was warranted. 320 Md. at 40, 575 A.2d 1235.[6] Under this test, a court "must weigh in the balance the convenience of the witnesses [party and non-party] and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Id.* at 40, 575 A.2d 1235 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). To simply call it a balancing test and the "more convenient" forum is in some regards, however, misleading, because *Odenton, Urquhart*, and *Leung*, make it clear that "a motion to transfer should be granted only when the balance weighs strongly in favor of the moving party." *Odenton, supra*, 320 Md. at 40, 575 A.2d 1235; *Urquhart, supra*, 339 Md. at 18 n. 7, 660 A.2d 412; *Leung, supra*, 354 Md. at 224, 729 A.2d 956. The party seeking transfer must present evidence weighing strongly in its favor, because when multiple venues are jurisdictionally appropriate, a plaintiff has the option to choose the forum. *Urquhart, supra*, 339 Md. at 18 n. 7, 660 A.2d 412; *see also Wilde v. Swanson*, 314 Md. 80, 94, 548 A.2d 837 (1988) (finding that when multiple venues are proper, the plaintiff possesses the option to choose).

Judge Rodowsky addressed the point in *Leung:*

Proper regard for the plaintiff's choice of forum is the reason why "a motion to transfer [from the forum chosen by the plaintiff] should be granted only when the balance weighs strongly in favor of the moving party." *Urquhart v. Simmons*, 339 Md. 1, 18 n. 7, 660 A.2d 412, 420 n. 7 (1995) (citing *Odenton*, 320 Md. at 40, 575 A.2d at 1238). Com-

---

**6.** Md. Rule 2-327(c) was derived from 28 U.S.C. § 1404(a), and therefore federal law construing § 1404(a) is persuasive. *See Odenton, supra,* 320 Md. at 40, 575 A.2d 1235.

mentators on Rule 2–327(c) have recognized that "due consideration must ... be given to the plaintiff's selection of forum, and this selection will not be altered solely because it is more convenient for the moving party to be in another forum." P.V. Niemeyer & L.M. Schuett, *Maryland Rules Commentary* 215–16 (2d ed. 1992) (Niemeyer & Schuett).

This respect for the plaintiff's choice of forum is derived largely from federal law developed under Title 28 U.S.C. § 1404(a).[ ] *See Urquhart,* 339 Md. at 10, 660 A.2d at 416; Niemeyer & Schuett at 215. *See also Doe v. Connors,* 796 F.Supp. 214, 221 (W.D.Va.1992) ("[T]he plaintiff has the primary right to choose his forum and that selection is not be easily overthrown."); M. Moore, *Federal Practice* § 111.13[1][c][i], at 111–67 (Mathew [sic] Bender 3d ed. 1997)(Moore)("As a general rule, the plaintiff's choice of forum is given significant weight. . . ."); Annotation, *Questions as to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial Code (28 U.S.C. § 1404(a)),* 1 A.L.R. Fed. 15, 49–50 (1969)("Unless the balance of convenience is strongly in favor of the defendant, or such balance weighs heavily in favor of the defendant, the plaintiff's choice of forum should not, or should rarely, be disturbed."). The plaintiff's choice, however, is not an absolute and uncontrolled privilege that is determinative under present *forum non conveniens* law. 1 A.L.R. Fed. at 51.

354 Md. at 224–25, 729 A.2d 956 (footnote omitted).

■ Appellants contend that the circuit court erred by considering only the convenience of prospective lay witnesses, and did not consider any other factors. Appellants also argue that the trial court applied the wrong legal standard by applying, in essence, a preponderance of the evidence standard to determine that Montgomery County was "more convenient," instead of the "weigh strongly" standard mandated by *Odenton, Urquhart,* and *Leung.* Appellee, on the other hand, conspicuously leaves out any mention of the "weigh strongly" standard, and focuses on the facts of the three transfer cases,

above referred to, to argue that the lower court did not abuse its discretion.

The record reveals to us, and counsel at oral argument confirmed, that, at the chambers status conference, Judge Missouri had before him all pleadings that had been filed to that time, including the motions for, and opposing, transfer, and the supporting legal memoranda.

Adventist's motion to transfer specifically addressed the Rule 2–327(c) factors of convenience and the interests of justice. In support of its "interests of justice" argument, Adventist addressed court congestion, the "local interest" in having local disputes decided where they arose, and the burden of jury service upon citizens of an unrelated forum. *See Urquhart, supra,* 339 Md. at 18–19, 660 A.2d 412.

To bolster the "court congestion" position, Adventist attached, as exhibits to its motion, excerpts from the statistical supplement to the Annual Report of the Maryland Judiciary— 1999–2000. That report revealed that, at the end of fiscal year 2000, there were pending in the Circuit Court for Prince George's County 43,507 civil cases (of 55,192 total cases pending) while in the Circuit Court for Montgomery County there were pending 12,287 civil cases (of 19,925 total cases pending).

Adventist also posited that, because the alleged negligent treatment of Kenneth, III, occurred in Montgomery County, at a local hospital, and while being cared for by predominantly local staff, the citizens of Montgomery County have an interest in local determination of the issues. Additionally, it suggests that Prince Georges' citizens will be burdened with jury service in the adjudication of a case bearing no relation to their county.

The convenience of the witnesses track of the Rule 2–327(c) factors is somewhat more objective. Time and distance can be determined with relative certainty. The result of appellants' supplemental search shows an advantage, to a majority of witnesses, to a trial of the case in Montgomery County. Eleven of the fifteen witnesses identified live closer to Rockville than to Upper Marlboro. Not surprisingly then, those

same eleven witnesses can reach (from their homes) Rockville more quickly than they can reach Upper Marlboro. Obviously, their workplace is more convenient to Rockville as well. Judge Missouri properly concluded that Montgomery County was a more convenient forum for potential non-party witnesses.

We turn then to the convenience of the parties. Kenneth, III's mother lives in Montgomery County, as does Kenneth, III, at least part of the time. The only contact with Prince George's County from the perspective of appellants is the fact that Kenneth, Jr., resides there temporarily with his father.[7] On the Adventist side of the equation, as we have noted, the principal place of business is in Montgomery County; all of the alleged acts or omissions occurred in Montgomery County; the involved Adventist employees work in Montgomery County; and, presumably, Kenneth's medical records are located there as well. Appellants assert that, because Adventist provides home health care and nursing services to clients in Prince George's County, and because it operates a cancer center there, Prince George's County is the proper forum.[8]

---

7. Although not raised by either party, the father actually lives closer to Rockville than Upper Marlboro, even though he is currently residing in Prince George's County. According to the record, Kenneth Rocke, Jr., lives at 7410 New Hampshire Avenue, 506, Hyattsville, Maryland 20782. A search on MAPQUEST revealed that the distance between the 7400–7500 block of New Hampshire Avenue to the court in Rockville was 14.42 miles with a driving time of 17 minutes. The distance and travel time is nearly double that to the court in Upper Marlboro, being 27.02 miles and 31 minutes respectively. If, in fact, none of the appellants lived in Prince George's County, we would be less prone to give deference to that forum. *See* Annotation, *Questions as to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial Code (28 U.S.C. § 1404(a))*, 1 A.L.R. Fed. 15, 51 (1969).

8. Appellants, at the motions hearing and in this appeal, have repeatedly emphasized that Adventist Healthcare's conduct of business in Prince George's County supports their *forum non conveniens* argument. We do not agree. Appellee's conduct of business is relevant for determining jurisdictional venue under § 6–201 of Cts. & Jud. Proc., and the constitutional "minimum contacts" analysis. The amount of business, however, has little bearing on Md. Rule 2–327, other than the fact that when there is more than one permissible venue, the plaintiff may

We do not see that as a substantial factor in view of the fact that none of the care complained of was rendered in Prince George's County.[9]

The closest case, factually, to the instant case is *Urquhart, supra,* 339 Md. 1, 660 A.2d 412. In that case, also a medical negligence claim, the decedent, Simmons, was initially treated at Washington Adventist Hospital in Montgomery County, by physicians whose principal offices were in Montgomery County. *Id.* at 3–4, 660 A.2d 412. All in-person and telephone contacts between Simmons and the physicians occurred in Montgomery County. *Id.* at 4–5, 660 A.2d 412. Thereafter, Simmons suffered complications and was admitted to a hospital in Prince George's County, where he died. *Id.* at 4, 660 A.2d 412. Suit was filed in Prince George's County but, upon motion by defendants, was transferred to Montgomery County. *Id.* at 4–6, 660 A.2d 412.

After first holding that a trial judge may not, *sua sponte,* transfer an action based upon grounds of *forum non conveniens,* but may do so only after a party has filed a motion pursuant to Md. Rule 2–327(c), the Court of Appeals found that defendants' motion was sufficient to permit such transfer and, upon the relevant facts, the trial court did not abuse its discretion in so doing. *Id.* at 15, 19, 660 A.2d 412. The Prince George's County contacts and factors in *Urquhart* were certainly no less than the Prince George's County contacts here.

As appellants have pointed out, Judge Missouri, in his oral opinion and ruling from the bench on February 14, 2002, did not articulate the so-called "public interest" factors, but rather concentrated on the "convenience to parties and witnesses"

---

choose his or her preferred venue. We agree with Judge Missouri, when he stated "[a]nd the issue of the—Adventist system having other entities within the county in which they do business is really of no moment because the issue of jurisdiction is, [is] not one that's really before the Court . . . ."

**9.** *See Miller v. Cohen,* 1991 WL 8432, *1, 1991 U.S. Dist. LEXIS 974, *4 (D.Md.1991) (Memorandum Opinion) (stating that "plaintiff's choice of venue is entitled to less weight where there is little connecting the forum to the cause of action."); *see also* 1 A.L.R. Fed., *supra,* at 51.

factor. However, we are struck by his opening remarks: "When I had the meeting in chambers, I told counsel I had, I had looked at everything else in the case." We draw a rational inference from his comment that he had taken into account all of the factors raised in the motions, including court congestion, local interest, juror inconvenience, and convenience of the respective parties.

Judge Missouri pointed out that after looking "at everything else in the case" he requested information about the location of witnesses, *vis a vis*, Rockville and Upper Marlboro. As we read his opinion, he then applied the time and distance information as an overlay to the information that had been previously developed, and concluded that the cumulative effect of those factors was to outweigh appellants' choice of forum, sufficient to satisfy the "weigh strongly" standard.

We recognize that, unless the balance of convenience is strongly in favor of a defendant, a plaintiff's choice of forum should rarely be disturbed—mere inconvenience to a defendant is not sufficient. This choice, however, is "not an absolute and uncontrolled privilege that is determinative under present *forum non conveniens* law." *Leung, supra*, 354 Md. at 225, 729 A.2d 956. As Judge Missouri aptly pointed out at the motions hearing:

> I don't know that when you say that the plaintiff is the person that determines where a case may be filed that that is all-encompassing. I don't think that's the case. The plaintiff certainly is to be given due deference with respect to where a case should be located, but I don't know that you have to yield to the plaintiff just because the plaintiff wants it, because sometime [sic] plaintiffs want things that is [sic] inappropriate to them, and they file cases in places where it has no business being filed.

We also reiterate that the trial judge is granted "wide discretion" in considering a motion to transfer, *Odenton, supra*, 320 Md. at 40, 575 A.2d 1235, and that we should be reluctant to substitute our judgment for that of the court below, *Wagner, supra*, 109 Md.App. at 52, 674 A.2d 1.

We do not agree with appellants that Judge Missouri applied an incorrect standard of law by giving greater weight to factors of convenience than to other relevant recognized factors. Nor do we agree with appellants that Judge Missouri's use of the term "more convenient" suggests that he used a preponderance of the evidence balancing standard, rather than the "weigh strongly" standard outlined in *Odenton, Urquhart*, and *Leung*.[10]

"The exercise of a judge's discretion is presumed to be correct, he is presumed to know the law, and is presumed to have performed his duties properly." *Lapides v. Lapides*, 50 Md.App. 248, 252, 437 A.2d 251 (1981) (internal citations omitted). Absent an indication from the record that the trial judge misapplied or misstated the applicable legal principles, the presumption is sufficient for us to find no abuse of discretion. *See Strauss v. Strauss*, 101 Md.App. 490, 511, 647 A.2d 818 (1994), *cert. denied*, 337 Md. 90, 651 A.2d 855 (1995). Additionally, a trial judge's failure to state each and every consideration or factor in a particular applicable standard does not, absent more, constitute an abuse of discretion, so long as the record supports a reasonable conclusion that appropriate factors were taken into account in the exercise of discretion. *See Wagner, supra*, 109 Md.App. at 50, 674 A.2d 1 (stating that "we presume judges to know the law and apply it, even in the absence of a verbal indication of having considered it."); *see also Kirsner v. Edelmann*, 65 Md.App. 185, 196 n. 9, 499 A.2d 1313 (1985) ("[A] judge is presumed to know the law, and thus is not required to set out in intimate detail each and every step in his or her thought process.").

We are satisfied from our review of the record that Judge Missouri engaged in a clear and thorough consideration of the requisite factors created by Md. Rule 2–327(c), and the opin-

---

10. In *Urquhart*, for example, the Court of Appeals applied the appropriate balancing standard, and stated "there was ample evidence for the trial court to determine that it would be *more convenient* for the parties and witnesses to have this action tried in Montgomery County and that transferring the case would serve the interests of justice." 339 Md. at 18, 660 A.2d 412 (emphasis added).

ions of this Court and the Court of Appeals. We find no abuse of discretion and shall affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**