876 A.2d 157

**Juanita BITTNER, et al.**

v.

**Gary HUTH, et al.**

**No. 2395, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

June 21, 2005.

Virginia W. Barnhart (Pope & Hughes, P.A., on the brief), Towson, MD, for Appellant.

Paul Mayhew (Edward J. Gilliss, County Atty., on the brief), Towson, MD, for Appellee.

Panel: MURPHY, C.J., JAMES R. EYLER, and PAUL E. ALPERT, (Retired, specially assigned), JJ.

MURPHY, Chief Judge.

In the Circuit Court for Baltimore City, Charles Bittner, his wife Juanita, and their daughter Julie Bittner, appellants, sued Baltimore County and several (named and unnamed) Baltimore County police officers,[1] appellees. According to appellants, who reside at 6561 St. Helena Avenue in Baltimore City, several Baltimore County police officers committed an unlawful trespass upon the Bittner residence on October 7, 2002, when the officers made (1) a warrantless entry of the residence to arrest Mr. and Mrs. Bittner's son, Steven Bittner, and (2) a second warrantless entry after the officers had left the premises with Steven in custody.[2] Appellees argued that, even though almost all of the events at issue occurred in

---

1. The appellees include officers Gary C. Huth, Gary W. Brown, Robert J. Stelmack, Mark Worden, Timothy Ward, Harry Ricketts, Theresa Emmert, as well as "John Does" and "Jane Does" (unidentified officers and employees of the Baltimore County Police Department.)

2. Count 3 of the Complaint states: "In entering and invading the Bittner home, without cause, justification, authority, privilege or permission, these Defendants [Huth, Brown, Stelmack and Worden, and Baltimore County] intentionally and/or negligently intruded upon the possessory interest of Charles and Juanita Bittner therein. By conducting an unwarranted search of the Bittner home and Bittners' personal belongings, the Defendants, and those aiding, abetting, encouraging and inciting them, interfered with the use and enjoyment of the Plaintiffs' real and personal property, asserting rights inconsistent with Plaintiffs' right of control . . . ."

Baltimore City,[3] appellants should be required to litigate their claims in the Circuit Court for Baltimore County. The circuit court agreed with appellees' venue argument, and this appeal followed, in which appellants present three questions for our review:

I. Did the trial court improperly transfer venue to the Circuit Court for Baltimore County?

II. Did the lower court improperly dismiss the Bittners' trespass to land claim?

III. Did the lower court improperly make factual findings and improperly consider arguments and papers offered by appellees in connection with their reply motion?

For the reasons that follow, we answer "yes" to questions I and II. We shall therefore remand this case to the Circuit Court for Baltimore City for further proceedings not inconsistent with this opinion.

## The Ruling at Issue

Subsequent to a December 29, 2003 motions hearing, the circuit court filed a Memorandum Opinion and Order that included the following findings of fact and conclusions of law:

In the case at bar, Steven Bittner committed a misdemeanor in the presence of Baltimore County Police Officers and fled to his home. The Officers followed him, entered the house, arrested him and shortly thereafter searched the Bittner home. (The Court infers that the search was shortly after Steven Bittner and the other men were arrested and removed from the house based on paragraphs 8–10 of the Bittner affidavit.) The Baltimore County Officers in this case had at least the same degree of good faith and reasonable belief in the appropriateness of their actions as

---

3. Appellant Juanita Bittner has also asserted claims arising out of her alleged mistreatment that allegedly occurred after she was arrested at her residence and transported to the Baltimore County Police Station located at 1747 Merritt Boulevard in the Dundalk section of Baltimore County.

the Deputies in *Ford* [*v. Baltimore City Sheriff's Office*, 149 Md.App. 107, 814 A.2d 127 (2002)]. They were in pursuit of someone they witnessed commit a crime and, accordingly, had a privilege against trespass to enter the Bittner home. The plaintiffs argue that even if the first entry by the Defendant Officers was justified, the second was not. On the information before this Court as to the second entry into the home, there is nothing to establish, or even suggest, that the Officers' good faith and reasonable belief as to the propriety of their actions did not extend to the second entry of the home shortly after the first. Accordingly the second trespass was also privileged as against a trespass action. For these reasons, the Court finds that an action for trespass to land will not support venue in Baltimore City. (The Court is not dismissing the trespass claim for procedural reasons and because the allegations of the complaint can also be construed as a trespass to personal property which this Court has not had reason to address. This decision is without prejudice. The defendants may move to dismiss in the transferee jurisdiction.) Therefore, venue does not lie in Baltimore City pursuant to section 6–203(b)(4) of the Courts and Judicial Procedure Article. Rather it lies in Baltimore County pursuant to section 6–201.

\* \* \*

There are seven named defendants, all of whom are Baltimore County Police Officers and then unnamed Baltimore County Police Officers. Presumably all would find a Baltimore County venue convenient since that is where they work, as would the officials of Baltimore County itself, the municipal defendant. Additionally there is the likelihood of numerous other Baltimore County witnesses based on the other allegations. Plaintiff Juanita Bittner alleges that she was transported to Baltimore County and searched, imprisoned, handcuffed, and denied necessary medical attention there. She alleges she was further imprisoned at the office of the Baltimore County Commissioner and released from there without money or transportation with only bedroom slippers to wear. Juanita Bittner further alleges that she

had to engage counsel to defend herself against charges in Baltimore County. She alleges that she negotiated with Baltimore County for it to drop charges against her in exchange for her agreement not to pursue a civil action against it. She alleges that Baltimore County was responsible for publication of the events in a local Baltimore County newspaper, the Dundalk Eagle. (The Court takes judicial notice that most of the area known as Dundalk is located in Baltimore County.)

The plaintiffs allege that the obstruction charge was dismissed by a Baltimore County prosecutor and that they filed a complaint with Baltimore County. They further allege that Julie and Juanita were confronted by Baltimore County Police Officers with knowledge of the complaint pending against the County and that the Officers acted in retaliation because of that complaint.

\* \* \*

It is quite obvious from the plaintiffs' allegations that there are numerous persons in Baltimore County government, or who were simply located in Baltimore County, who are potential witnesses to the actions alleged by the plaintiffs. The list includes prosecutors, clerks, the Commissioner, and citizens. It is beyond peradventure that the events subsequent to the entry into, and search of the Baltimore City home of the Bittners has produced the potential for numerous Baltimore County witnesses and witnesses who are custodians of the Baltimore County records documenting the events involving the plaintiffs there. Because all these events took place in Baltimore County and many Baltimore County government employees or agents were involved, it can be presumed that a Baltimore County venue would be convenient for these witnesses. Accordingly this Court finds that "the convenience of the witnesses" factor weighs heavily in favor of a Baltimore County venue. The court also finds that transfer to Baltimore County is in the interest of justice. As outlined above, most of the contacts in the events giving rise to the plaintiffs' several claims occurred in Baltimore County and the actors are all exclu-

sively Baltimore County Police Officers or agents. Baltimore County and its citizens, therefore have a keen interest in addressing the alleged misconduct of its Officers and Baltimore County courts and jurors are the proper ones to be tasked with determining the extent of their improprieties, if any. As alleged, the misconduct by Baltimore County agents, including police officers, prosecutors, the Commissioner, clerks and possibly county attorneys, is prevalent and extreme. The multitude of injustices alleged in Baltimore County government should be addressed in that forum.

Because of the multitude of contacts with Baltimore County, and the nature and extent of alleged misconduct by Baltimore County agents, Baltimore County's "local interest" in having this matter heard locally is far more pronounced than was the interest of the defendant health care provider in *Cobrand* [*v. Adventist Healthcare, Inc.*], see 149 Md.App. [431] at 441[, 816 A.2d 117]. Accordingly this Court concludes that a transfer of this action to the Circuit Court for Baltimore County is in the interest of justice. For these reasons, the Court finds that statutory venue lies in Baltimore County and alternatively, that the convenience of the parties and witnesses and the interests of justice, dictate that this Court should exercise its discretion, *Cobrand*, 149 Md.App. at 444[, 816 A.2d 117] to transfer this case to the Circuit Court for Baltimore County. It will be so ordered.

## Venue of a Trespass to Land Action

A trespass is defined as an intentional or negligent intrusion upon or to the possessory interest in property of another. *Patapsco Loan Co. v. Hobbs*, 129 Md. 9, 15–16, 98 A. 239 (1916) (citations omitted). "Every unauthorized entry upon the land of another is a trespass, and whether the owner suffers substantial injury or not, [the owner] at least sustains a legal injury, which entitles [the owner] to a verdict for some damages; though they may, under some circumstances, be so small as to be merely nominal." *Tyler v. Cedar Island Club,*

*Inc.,* 143 Md. 214, 219, 122 A. 38 (1923) (quoting *B. & O. R.R. Co. v. Boyd,* 67 Md. 32, 40, 10 A. 315 (1887)).

In the case at bar, appellants allege that two separate trespasses occurred: (1) one before Steven Bittner was arrested, and (2) one that occurred when the officers entered the residence a second time. The trial court found the initial trespass was justified under the "Fresh Pursuit" statute, Md.Code. Ann.Crim. Proc. 2–301 which, in pertinent part, provides:

(c) A law enforcement officer may engage in fresh pursuit of a person who:

(2) has committed a misdemeanor in the presence of the law enforcement officer in the jurisdiction in which the law enforcement officer has the power of arrest.

(d) A law enforcement officer who is engaged in fresh pursuit of a person may:

(1) arrest the person anywhere in the State and hold the person in custody . . .

In finding that the police were privileged to enter appellant's residence, the trial court relied on *Ford v. Baltimore Sheriff's Office,* 149 Md.App. 107, 814 A.2d 127 (2002), in which the officers made a forcible entry into Ford's home in order to serve what turned out to be an invalid arrest warrant.[4] The *Ford* Court held that no actionable trespass occurred in this case because the officers were justified in relying on the facially valid warrant, and they did not use excessive force to effect the entry.[5] *Id.*

Appellants argue that, even if the initial trespass was justified under the "fresh pursuit" doctrine, there was no justification whatsoever for the second trespass. Appellees claim (in

---

4. The arrest warrant had been earlier dismissed.

5. The *Ford* Court relied on *Ashton v. Brown,* 339 Md. 70, 660 A.2d 447 (1995), which held that an arresting officer is not liable for acting upon an invalid arrest warrant that appears on its face to be legal, provided that the arresting officer has a reasonable belief that the warrant is valid. *Ford,* 149 Md.App. at 120, 814 A.2d 127.

the words of the police report prepared subsequent to the events at issue) that the search subsequent to Steven Bittner's arrest was justified by the need to locate items "within Mr. Bittner's lunge reach and grasp and see if a fourth person from the Blazer was hiding in the upstairs bedroom." It is well settled that a law enforcement officer is not entitled to summary judgment merely because the law enforcement officer filed an affidavit in which he or she denies having acted with malice. *DiGrazia v. County Exec. for Mont. Co.*, 288 Md. 437, 445, 418 A.2d 1191 (1980); *Clea v. Mayor and City Council of Baltimore*, 312 Md. 662, 677–78, 541 A.2d 1303 (1988). For that reason, appellees' explanation for the second entry—which may be accepted as true,[6] or rejected as false by the trier of fact—is insufficient to support the circuit court's conclusion that "the second trespass was also privileged against a trespass action."

For the reasons stated above, we are persuaded that appellants are entitled to a trial on the merits of the trespass action they have asserted as a result of the second warrantless entry into the Bittner residence. We are also persuaded that, when a viable trespass claim exists, venue is in the jurisdiction where the trespass is alleged to have occurred.

Section 6–201 of the Courts and Judicial Proceedings Article, which sets forth the "general" venue rule, expressly provides that the general rule is "subject to" both sections 6–202 [7] and 6–203:

### 6–201. In general

---

6. CP § 2–301 permits an officer to engage in "fresh pursuit" of a person who has (1) committed or is reasonably believed to have committed a felony, or (2) committed a misdemeanor in the presence of a police officer. There is a serious question as to whether the "fresh pursuit" doctrine justified a second entry into appellants' residence to search for the "fourth passenger."

7. Section 6–202 of the Courts and Judicial Proceedings Article provides additional venue choices for a plaintiff in special cases. These choices are also subject to the venue mandate of 6–203 in cases involving trespass to land.

(a) Subject to the provisions of 6–202 and 6–203 and unless otherwise provided by law, a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation. In addition, a corporation also may be sued where it maintains its principal offices in the State.

(b) If there is more than one defendant, and there is no single venue applicable to all defendants, under subsection (a) all may be sued in a county in which any one of them could be sued or in the county where the cause of action arose.

### 6–203 General Rule Inapplicable

(a) The general rule of 6–201 does not apply to actions enumerated in this section.

(b) The venue of the following actions is in the county where all or any portion of the subject matter of the action is located:

 (1) Partition of real estate;

 (2) Enforcement of a charge or lien on land;

 (3) Eminent domain;

 *(4) Trespass to land;* and

 (5) Waste. . . .

(Emphasis added).

In *Superior Construction Co. v. Elmo,* 204 Md. 1, 102 A.2d 739 (1954), a case that involved a claim that real property on the Baltimore City side of the boundary line between Baltimore City and Baltimore County had been damaged by operations conducted on contiguous land on the Baltimore County side of the boundary line, the Court of Appeals stated:

> The distinction between local and transitory actions still exists in Maryland, and equally well settled is the rule that an injury to real estate is local and not transitory, as the cause of action could not have originated in any other place. *Patterson v. Wilson,* 6 Gill & J. 499 [(1834)]; *Ireton v. Mayor and City Council of Baltimore,* 61 Md. 432, 434 [(1884)]; *Crook v. Pitcher,* 61 Md. 510 [(1884)]; *Gunther v.*

*Dranbauer,* 86 Md. 1, 38 A. 33 [(1897)]; *Guest v. Commissioners of Church Hill,* 90 Md. 689, 696, 45 A. 882, 884 [(1900)]; *Gusdorff v. Duncan,* 94 Md. 160, 50 A. 574 [(1901)]; *Mayor and City Council of Baltimore v. Meredith's Ford and Jarrettsville Turnpike Company,* 104 Md. 351, 65 A. 35 [(1906)]; *Phillips v. Mayor and City Council of Baltimore,* 110 Md. 431, 433, 72 A. 902, 904, 25 L.R.A., N.S., 711 [25 L.R.A.N.S. 711 (1909)].

The fact that the legislature deemed it necessary to enact Article 75 § 160, 1951 Code (enacted in its present form by Acts of 1916, Chapter 617) to give jurisdiction under certain circumstances to a court sitting in a county (or Baltimore City) other than where the damaged real property is located strongly suggests recognition and continuing approval of the general rule that damages to real estate can be redressed only where the land lies.

Poe thus outlines the laying of venue in local actions in Maryland: 'In the case of trespass to real property, where the party committing it shall remove from the county where the property lies, or can not be found in such county, suit may be brought against him in any county where he may be found [Art. 75, § 160, 1951 Code]; but in all other cases the test of the jurisdiction is the *situs* of the property; and the venue must be averred and averred truly. If the declaration fails to allege the jurisdictional fact of the locality of the land, the defect may be availed of on demurrer.' 1 Poe, Pleading and Practice at Law, Sec. 728.

... *Crook v. Pitcher,* supra, stated, in holding that the trial court had improperly overruled defendant's demurrer: 'Where the action is local, and the suit is brought in another place, the proper mode of taking advantage of the defect is by demurrer, and unless the defendant demurs, the defect will be cured by the Statute of Jeofails, 16 & 17 Car. II' See also 2 Alexander's British Statutes (Coe's Ed.) 659 fn.

The rationale of the language quoted is that the distinction between local and transitory action does not touch the jurisdiction of a court but only determines the particular manner in which the jurisdiction should be exercised. *Brit-*

*ish South Africa Company v. Companhia de Mocambique,*
(1893) A.C. 602, 619. While there is a minority view to the
contrary, the rule in most jurisdictions is as above stated.
22 *Encyclopedia of Pleading and Practice* 815, and cases
there collected.

*Id.* at 6–8, 102 A.2d 739.

■ Although the venue statutes were repealed and reen-
acted subsequent to the *Superior Construction* case, no statu-
tory change trumped the above quoted holding of that case.
Under *Superior Construction* and § 6–203, venue of appel-
lants' trespass action is in Baltimore City, which is where the
warrantless entries occurred.

### "Forum Non–Conveniens" Transfer

■ The circuit court ruled in the alternative that, even if
statutory venue did lie in Baltimore City, the case should be
transferred to the Circuit Court for Baltimore County on a
"forum non conveniens" analysis permitted by Md. Rule 2–
327(c),[8] which provides:

> On motion of any party, the court may transfer any action
> to any other circuit court where the action might have been
> brought if the transfer is for the convenience of the parties
> and witnesses and serves the interests of justice.

---

8. Appellants argue that the circuit court erred in transferring venue on
forum non conveniens grounds because this ground was not asserted in
appellees' written motions. While it is true that Md. Rule 2–327(c)
provides that the court may order transfer *"[o]n motion of any party,"*
Md. Rule 2–311 expressly provides that

> an application to the court for an order shall be by motion which,
> unless made during a hearing or trial, shall be made in writing.

In the case at bar, appellees' counsel made the following oral motion
during the December 29, 2003 venue hearing:

> So, I would finally say, even if you find the venue could be proper
> here, ... both [appellants'] counsel and myself work a block from the
> courthouse in Towson. All of the [appellees] work in Baltimore
> County. And [appellants] themselves live a block from the county[.]
> ... [T]he convenience [factor] clearly [favors trial] in Towson[,] not
> the city.

Under these circumstances, we are persuaded that appellees did not
waive or forfeit their right to present a forum non conveniens argu-
ment.

This rule permits an action to be transferred to another appropriate venue even though a plaintiff's choice of venue is proper.

Because we are persuaded that the case at bar should not have been transferred on forum non conveniens grounds, we do not reach the issue of whether Md. Rule 2–327(c) can *never* be applied in a trespass to land case. Assuming that a trespass to land case can be transferred on forum non conveniens grounds, the case at bar is not such a case.

 While it has often been stated that the appellate court applies the "abuse of discretion" standard to the review of a trial court's decision to transfer a case on forum non conveniens grounds,[9] it is also well settled that the trial court's decision must be based upon (1) correct findings of fact, and (2) a proper analysis of the applicable burden of persuasion:

It is the moving party who has the burden of proving that the interests of justice would be best served by transferring the action, ... and a motion to transfer should be granted only when the balance weighs strongly in favor of the moving party.... To reach this decision, a court "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'"

*Odenton, supra,* 320 Md. at 40, 575 A.2d 1235 (citations omitted).

 As the *Cobrand* Court explained, "to simply call it a balancing test and the 'more convenient' forum is in some regards ... misleading, because *Odenton; Urquhart* and

---

9. "When determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, *a court is vested with wide discretion*." *Odenton Dev. Co. v. Lamy,* 320 Md. 33,40, 575 A.2d 1235 (1990) (citations omitted) (emphasis added); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419(1981)(noting that "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court ... [and] may be reversed only when there has been a clear abuse of discretion ...") (quoted in *Urquhart v. Simmons,* 339 Md. 1, 17, 660 A.2d 412 (1995)).

*Leung* make it clear that 'a motion to transfer should be granted only when the balance weighs strongly in favor of the moving party.' " [10] *Cobrand, supra,* 149 Md.App. at 440, 816 A.2d 117 (citing *Odenton, supra,* 320 Md. at 40, 575 A.2d 1235; *Urquhart v. Simmons,* 339 Md. 1, 18, n. 7, 660 A.2d 412 (1995); and *Leung v. Nunes,* 354 Md. 217, 224, 729 A.2d 956 (1999)).

The heavy burden of persuasion upon the party seeking the transfer is required by the rule that, when multiple venues are appropriate, it is the plaintiff who has the choice of venue. *Urquhart, supra,* 339 Md. at 18, n. 7, 660 A.2d 412; *Cobrand, supra,* 149 Md.App. at 440, 816 A.2d 117. As the Honorable Glenn T. Harrell, Jr., now serving on the Court of Appeals, stated for this Court:

> Moreover, we note that Rule 2–327(c) was not designed to serve as a tactic enabling a defendant to forum shop to the detriment of a plaintiff's choice of venue. This is particularly true where, as in the instant case, the venue to which appellees sought a transfer was in close proximity to the one chosen by appellants.

*Simmons v. Urquhart,* 101 Md.App. 85, 107, 643 A.2d 487 (1994), *rev'd. on other grounds,* 339 Md. 1, 660 A.2d 412 (1995).

In *Stidham v. Morris,* 161 Md.App. 562, 870 A.2d 1285 (2005),[11] this Court reaffirmed the proposition that "[a]

---

**10.** In *Urquhart v. Simmons,* the Court of Appeals held that the trial court did not abuse its discretion in transferring a medical malpractice action on forum non conveniens grounds when the record showed that the county to which the action was transferred was the county in which (1) the patient was initially treated by the physician, (2) the physician-defendants resided, and (3) both the plaintiff and a physician-defendant were present when a relevant conversation between the plaintiff and the physician took place.

**11.** In *Stidham,* this Court affirmed a decision to transfer a negligence action from the Circuit Court for Prince George's County to the Circuit Court for Baltimore County, where the record showed that (1) the auto accident occurred in Baltimore County, and (2) the plaintiff-appellant was a resident of Baltimore County on the day of the accident. We recognize that, because *Stidham* had not been filed prior to the ruling at issue in the case at bar, the circuit court did not have the benefit of that opinion. The appellate court, however, is required to apply the

motion to transfer should be granted only when the balance weighs strongly in favor of the moving party." When we (1) give "proper regard" to appellants' choice of forum, (2) consider how far the parties must travel to arrive at the courthouse,[12] (3) consider the relative ease of access to the premises, if the trial judge is persuaded that a view would be appropriate, and (4) interpret CJP 6–203(b)(4) to be—at the very least—a statutory recognition of the proposition that there is an important "local interest" in having a trespass action decided in the jurisdiction where the trespass allegedly occurred, we are persuaded that the "balance weighs strongly in favor of" a trial in the Circuit Court for Baltimore City.[13] We shall therefore reverse the order transferring this case to the Circuit Court for Baltimore County and remand for further proceedings in the Circuit Court for Baltimore City.

**ORDER TRANSFERRING CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY BALTIMORE COUNTY.**

---

law as it exists on the date that the opinion is filed. *Snowden v. State*, 156 Md.App. 139, 152 n. 18, 846 A.2d 36 (2004), *aff'd*, *State v. Snowden*, 385 Md. 64, 867 A.2d 314 (2005).

**12.** We take judicial notice of the following verifiably certain facts:

(1) 6561 St. Helena Avenue is 17 miles from the County Courts Building in Towson, Maryland, but is only 8.96 miles from the two buildings in which the Circuit Court for Baltimore City is located, and (2) the Dundalk Police Station at 1747 Merritt Boulevard is 16.48 miles from the County Courts Building, but only 8.3 miles from the Circuit Court for Baltimore City.

**13.** Here, the balance simply does not weigh in favor of the appellees— "strongly," or otherwise. While many of the potential witnesses live or work in the Dundalk section of Baltimore County, (1) the plaintiff/appellants live in Baltimore City, and (2) the trespass, false arrest, false imprisonment, assault and battery claims all arise out of an incident that all parties agree occurred in Baltimore City. Moreover, the Baltimore County Police Station where the appellee officers work is much closer to the Circuit Court for Baltimore City than it is to the Circuit Court for Baltimore County.