949 A.2d 654

**Edna PAYTON–HENDERSON et al.**

v.

**Thomas EVANS et al.**

**No. 1326, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

June 2, 2008.

Edward Smith, Jr. (Randolph Gregory, Sr., on the brief), Baltimore, for appellant.

Paul M. Mayhew, Towson, and J. Michael Sloneker (Kevin W. McGivern, Anderson, Coe & King, LLP, on the brief), Baltimore, for appellee.

Panel: DAVIS, HOLLANDER, MOYLAN, CHARLES E., JR., (retired, specially assigned), JJ.

MOYLAN, J.

This case presents an illuminating contrast between a Motion to Dismiss for Improper Venue and a request for a discretionary transfer of venue on the ground of forum non conveniens. Because either may result in a transfer of venue, they are not infrequently confused with each other.

On the afternoon of Friday, May 7, 2004, a senseless and tragic shooting occurred as students at Randallstown High School in Baltimore County were leaving the school following the conclusion of an after-school charity basketball game. Matthew T. McCullough, a student at Randallstown High who had been suspended from school for several days, and Tyrone D. Brown drove up to the school's parking lot and got out of a black BMW. McCullough got into a fist fight with one of the

students. Brown retrieved a handgun from the BMW and fired into the crowd of students. Brown then handed the gun to McCullough, who also fired into the crowd. Several students were struck by the random shots, including William J. Thomas, III, who was seriously and permanently injured.

Thomas and his mother, Edna Payton–Henderson, were the plaintiffs below and are the appellants before us. They filed, on May 4, 2007, a complaint in the Circuit Court for Baltimore City, charging a number of defendants with the negligent failure to have prevented the injury to Thomas. The defendant-appellees are 1) Thomas Evans, who was on May 7, 2004, the principal of Randallstown High School; 2) the Board of Education of Baltimore County; 3) the Baltimore County Police Department; 4) Officer Richard J. Barney of the Baltimore County Police Department; 5) Officer Ricardo Hester of the Baltimore County Police Department; 6) one of the shooters, Matthew T. McCullough, and 7) the other shooter, Tyrone D. Brown.

On June 15, 2007, the defendants Evans and the Board of Education filed a Motion to Dismiss for Improper Venue or, in the alternative, a Motion to Transfer the Trial to Baltimore County on Grounds of Forum Non Conveniens. All of the other defendants except McCullough and Brown ultimately joined in the motions. McCullough was convicted on November 23, 2004, of multiple counts of first-degree assault and is serving a 100–year prison sentence at the Roxbury Correctional Institution in Hagerstown. Brown entered guilty pleas to attempted second-degree murder and various weapons charges and is serving a 50–year sentence at the Maryland Correctional Training Center, also in Hagerstown. Neither McCullough nor Brown has responded to any of the pleadings in any way.

A hearing on the motion was conducted before Judge George L. Russell, III on August 6, 2007. At the conclusion of the hearing, Judge Russell denied the Motion to Dismiss for Improper Venue but granted the Motion to Transfer the Trial

to Baltimore County on the Ground of Forum Non Conveniens.

## Motion to Dismiss For Improper Venue

The general rule as to the proper venue in which to bring a civil action is spelled out in Maryland Code, Courts and Judicial Proceedings Article, § 6–201:

(a) *Civil actions.*—Subject to the provisions of §§ 6–202 and 6–203 of this subtitle and unless otherwise provided by law, *a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation.* In addition, a corporation also may be sued where it maintains its principal offices in the State.

(b) *Multiple defendants.*—*If there is more than one defendant, and there is no single venue applicable to all defendants,* under subsection (a), all *may be sued in a county in which any one of them could be sued, or in the county where the cause of action arose.*

(Emphasis supplied).

Section 6–201 is implemented by Maryland Rule 2–322(a), which provides in pertinent part:

*The following defenses shall be made by motion to dismiss* filed before the answer, if an answer is required: ... *(2) improper venue* .... If not so made and the answer is filed, these defenses are waived.

(Emphasis supplied).

With respect to their Motion to Dismiss for Improper Venue, the key allegation made by the defendants was:

*Since no Defendant resides,* carries on a regular business, is employed, habitually engages in a vocation, or maintains principal offices *in Baltimore City as required by § 6–201 of the Courts and Judicial Proceedings Article* of the Maryland Code, nor is it the forum where this cause of action arose, as required by § 6–201(b) or § 6–202(8), *Balti-*

*more City is an improper venue.* Accordingly, this action should be dismissed.

(Emphasis supplied).

Although the defendants' motion was phrased as a Motion to Dismiss for Improper Venue, Maryland Rule 2–322(c) makes clear that, "In disposing of the motion, *the court may* dismiss the action or *grant such lesser or different relief as may be appropriate."* (Emphasis supplied). If a judge were to determine, pursuant to Courts and Judicial Proceedings Article, § 6–201, that the venue of a pending case was improper, the typical relief granted would be to transfer the case to a county where the venue would be proper. Indeed, Maryland Rule 2–327(b) expressly provides:

> If a court sustains a defense of improper venue but determines that in the interest of justice the action should not be dismissed, it may transfer the action to any county in which it could have been brought.

In its Commentary on Rule 2–322, Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary* (2d ed.1992), p. 189, explains:

> The court is not required to dismiss when it grants a motion under this rule. . . . If the court determines . . . that venue is improper, it should transfer the case to the appropriate court, as permitted by section . . . (b) of Rule 2–327. *Although a transfer instead of dismissal is discretionary, dismissal rarely serves a useful purpose.*

(Emphasis supplied). A Courts Article, § 6–201 motion to dismiss, therefore, will almost invariably, but not invariably, result in a transfer of venue.

What is now § 6–201 is a law, with a long and venerable pedigree, designed for the benefit of defendants in civil cases. In *Zouck v. Zouck,* 204 Md. 285, 291, 104 A.2d 573 (1954), Judge Hammond spoke of its purpose.

> It has been stated that *its purpose is to afford residents* of the State an *opportunity to avoid the defense of actions in counties distant from their homes* or places of employment.

(Emphasis supplied). See also *Woodcock v. Woodcock,* 169 Md. 40, 47–48, 179 A. 826 (1935), where the Court of Appeals explained:

> The purpose of the statute according a defendant, in other than the excepted cases, the right to be sued in the jurisdiction of his residence, and not in a jurisdiction foreign to him, is a salutary protection to all citizens of the state alike, and should be carefully guarded. It is evidently designed to accord a defendant the right to defend in a jurisdiction which better suits his own convenience, and ordinarily is preferable to him.

In *Swanson v. Wilde,* 74 Md.App. 57, 61–63, 536 A.2d 694, aff'd, *Wilde v. Swanson,* 314 Md. 80, 548 A.2d 837 (1988), Judge Wilner for this Court traced what is now § 6–201 back to the Laws of 1801, ch. 74, § 11, even while noting, 74 Md.App. at 62 n. 3, 536 A.2d 694, that the "statute had British and colonial antecedents." Whereas the first manifestation of the statute confined the venue to the county wherein the defendant resided, the opportunity for selecting a venue was modestly broadened in 1888.

> Although the statute was put in more modern form in the codification of 1860 (see Md.Code Ann. (1860), art. 75, § 87), *its substance remained essentially intact until the addition of another "proviso" in 1888*—that "*any person who resides in one county but carries on any regular business,* or habitually engages in any avocation or employment *in another county, may be sued in either county . . . .* " 1888 Md. Laws. ch. 456. At that point, a defendant could be sued (1) in the county where he lived, (2) in the country where he regularly worked, or (3) in any county if he had absconded from his county of residence or if process directed to his county of residence was returned *non est.*

74 Md.App. at 62, 536 A.2d 694 (emphasis supplied).

In a two-step process beginning in 1945 and culminating in the Acts of 1954, ch. 60, the Legislature essentially provided what is now, with only stylistic changes at the time of the code revision process of 1974, Courts and Judicial Proceedings

Article, subsection 6–201(b). See also *Eck v. State Tax Commission of Maryland*, 204 Md. 245, 248–54, 103 A.2d 850 (1954); *Lampros v. Gelb*, 153 Md.App. 447, 837 A.2d 229 (2003).

 In deciding a Motion to Dismiss for Improper Venue, in stark contrast to deciding whether to transfer a case on the ground of forum non conveniens, there is no balancing of competing interests and the trial judge has no discretion. The venue chosen by the plaintiff is either proper, as a matter of law, or it is not. Whereas in a forum non conveniens case the focus is on everybody, in an improper venue case it is exclusively on the defendant or defendants. In a case involving multiple defendants under § 6–201(b), if so much as a single defendant, out of a hundred defendants, resides or works or does business in the county chosen by the plaintiff, venue in that county is, as a matter of law, proper, and the case may not be dismissed for improper venue. (That does not mean, of course, that the case may not be transferred to another venue for another and very different reason.)

One of the multiple defendants in this case was one of the shooters, Tyrone Brown. Whether Baltimore City, therefore, was a proper venue under § 6–201(b) wherein "all may be sued" depends upon whether Baltimore City was a proper venue wherein "any one of them [to wit, Tyrone Brown] could be sued." That, in turn, depends upon the residential status of Tyrone Brown.

At the time of the May 7, 2004 shooting at Randallstown High School, Tyrone Brown lived at 4200 Newbern Avenue in Baltimore City. At the time of the hearing on the motion, by dramatic contrast, he was serving a 50–year sentence at the Maryland Correctional Training Center in Washington County. With almost every conceivable consideration screaming Baltimore County, the plaintiffs stretched and strained to get the tip of the little toe of the case into Baltimore City. The plaintiffs argue that Tyrone Brown's presence in Washington County is involuntary and that his domicile, therefore, remains in Baltimore City. Their rationale, if they needed one (they

don't), would have been shaky. In terms of travel time and of logistical convenience, Tyrone Brown, if summoned to the trial, is going to be coming, under heavy guard, from Hagerstown and not from 4200 Newbern Avenue in Zone 15. As a wry factual observation, the comment of Judge (now Chief Judge) Krauser in *Stidham v. Morris*, 161 Md.App. 562, 565, 870 A.2d 1285 (2005), would appear to be right on target.

Although no rationale was offered by appellant for his choice of forum, his selection suggests that, *while home may be where the heart is, it is not necessarily where the largest recovery lies.*

All of that, however, is beside the point when dealing with the venue statute rather than with the issue of forum non conveniens. If the plaintiffs have selected a legally permissible venue, there is nothing further to be considered under § 6–201. The plaintiffs do not need to offer any rationale or justification. They may, as a matter of pure trial tactics, pick any permissible venue they deem advantageous, and the hope for a large recovery would be as good a tactical consideration as any other.

The appellees nonetheless argue doggedly that § 6–201(a) is concerned not with where a defendant is domiciled but only with the "county where the defendant resides." They insist that domicile and residence are not necessarily the same. What matters, their argument goes, is not where a defendant votes but how far he will have to come to the courthouse. The law itself is murky on this troublesome issue of where an incarcerated prisoner actually resides. Did Captain Dreyfus, one might ask, ever reside on Devil's Island or did he remain, during all those hellish years, a resident of Paris? The burden of persuasion was on the proponents of the motion to dismiss, and on this question of Tyrone Brown's residence, Judge Russell gave the plaintiffs the benefit of the doubt.

The plaintiff argues that charging documents from the Motor Vehicle Administration as well as other documents demonstrate that Mr. Brown's residence at the time he

committed the act for which he's accused was Baltimore City.

Further, *Plaintiff argues that Mr. Brown has not voluntarily relinquished his residency.* And there is an indication after his service of what can only be characterized as a lengthy prison sentence he would return back. *There's no indication that he has abandoned his residence in Baltimore City. As a result he is not a resident of Washington County but is in fact a resident of Baltimore City for the purpose of venue.*

(Emphasis supplied).

Accordingly, Judge Russell denied the defendants' Motion to Dismiss for Improper Venue.

Addressing first the mandatory version of the statute after reviewing the case law that has been submitted by counsel, as well as the well thought out, well articulated arguments in this case, after reviewing attorney general's opinion as well as the federal cases outlining venue, *I will consider Mr. Brown a resident of Baltimore City for the purposes of the mandatory venue statute.* There is no indication that Mr. Brown has abandoned his residence and there is case law supporting the notion that his transfer to Washington County was an involuntary one. I believe that the case law supporting in the Federal circuits supporting residency of Mr. Brown lying in Baltimore City are more persuasive under the circumstances although I certainly do understand a well thought out arguments of counsel on taking the other position.

(Emphasis supplied).

The defendants have challenged that ruling by way of a contingent cross-appeal. Because (as will now be discussed) they will prevail, however, in their effort to have the case removed from Baltimore City to Baltimore County, albeit for another reason, it is unnecessary for us to resolve the issue of a prisoner's residence for purposes of Rule 2–327(c). Our discussion of venue law should nonetheless help to illustrate the difference between statutory venue law, on the one hand,

and the rule of court dealing with forum non conveniens, on the other.

## A Shifting of Gears:

## Forum Non Conveniens

By contrast with the long statutory history of the venue law, tracing back to 1801 and beyond, the flexibility to transfer a case "solely on a forum non conveniens basis" only became a part of Maryland law as late as 1984 with the promulgation by the Court of Appeals of what is now Maryland Rule 2–327(c). *Lennox v. Mull,* 89 Md.App. 555, 562, 598 A.2d 847 (1991).

■ Under the very different rules of the game governing forum non conveniens, victory by the plaintiff on the issue of proper venue by no means augurs a concomitant victory when confronting that very different claim. As Judge Sharer explained in *Cobrand v. Adventist Healthcare, Inc.,* 149 Md.App. 431, 438, 816 A.2d 117 (2003):

> *Even though venue may be proper* in one jurisdiction, *a court has the discretion to transfer actions* to another competent jurisdiction *pursuant to the forum non conveniens doctrine.*

(Emphasis supplied).

*Urquhart v. Simmons,* 339 Md. 1, 10, 660 A.2d 412 (1995), similarly described a transfer based on that alternative rationale:

> Maryland Rule 2–327(c) permits a trial court to transfer an action on the grounds of *forum non conveniens* upon motion of any party when it appears that it would be more convenient for the parties and witnesses to have the case heard in another appropriate venue and the interests of justice would be served. *This rule permits an action to be transferred to another appropriate venue even though a plaintiff's choice of venue is proper.*

(Emphasis supplied).

The discretion to order a transfer stems from Maryland Rule 2–327(c), which provides and has provided since 1984:

(c) **Convenience of the parties and witnesses.** On motion of any party, *the court may transfer any action* to any other circuit court where the action might have been brought *if the transfer is for the convenience of the parties and witnesses and serves the interests of justice.*

(Emphasis supplied).

There are, to be sure, limitations on the transfer. Niemeyer and Schuett, *Maryland Rules Commentary*, explains at 215:

Obviously, if venue lies in only one circuit court and the action is filed in that court, a transfer cannot be made under this section, even if another circuit court would be more convenient for all parties and witnesses. *The transferee court must be a court where the action could have been filed in the first instance.*

(Emphasis supplied).

In *Lennox v. Mull,* 89 Md.App. 555, 563, 598 A.2d 847 (1991), Chief Judge Wilner traced the derivation of Rule 2–327(c):

Md. Rule 2–327(c) was derived from a Federal statute— 28 U.S.C. § 1404(a). *See* Source Note to Rule 2–327. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

See also *Odenton Development Co. v. Lamy,* 320 Md. 33, 40, 575 A.2d 1235 (1990).

In *Simmons v. Urquhart,* 101 Md.App. 85, 98–99, 643 A.2d 487 (1994), reversed on other grounds, *Urquhart v. Simmons,* 339 Md. 1, 660 A.2d 412 (1995), Judge Harrell for this Court compared the venue law with forum non conveniens principles.

*Although they share some characteristics, the concepts of venue and forum non conveniens indeed are procedurally distinct.*

Generally, *the right to change the venue of an action is purely statutory.* Therefore, *once a plaintiff has chosen a*

*proper forum* as defined by the relevant venue statutes, *the court maintains no discretion to alter the plaintiff's decision based on a lack of venue.*

*In comparison, forum non conveniens refers to the discretionary power of a court to transfer an action whenever it appears that the cause may be tried more appropriately in another valid venue.* Forum non conveniens is based on the assumption that both the original court and some other court fulfill all the applicable venue requirements. In effect, *forum non conveniens* provides the defendant with the opportunity to prove that although a plaintiff's choice of forum may be valid under a given venue statute, private and public interest factors weigh heavily in favor of transferring the action to another appropriate forum. Accordingly, *forum non conveniens allows the court, when certain conditions exist, to override the plaintiff's choice of forum.*

(Emphasis supplied).

### Immediate Appealability

■ Judge Russell's decision to transfer the case to Baltimore County on the ground of forum non conveniens was a final order within the contemplation of Courts and Judicial Proceedings Article, § § 12–101(f) and 12–301. Although the *denial* of a motion to transfer a case would be only interlocutory and not immediately appealable, the *affirmative order of transfer* is susceptible to immediate appellate review. In *Brewster v. Woodhaven Building and Development, Inc.,* 360 Md. 602, 615–16, 759 A.2d 738 (2000), Judge Raker explained:

[A]n order putting an appellant out of a particular court is also a final judgment. It follows that *an order transferring a case from one circuit court to another, for proper venue or for a more convenient forum,* and thereby terminating the litigation in the transferring court, *is a final judgment and thus immediately appealable.* At the same time, *an order denying a motion to transfer is not an immediately appealable final judgment,* because the litigation may continue in the court issuing the order.

(Emphasis supplied). See *Cobrand v. Adventist Healthcare, Inc.*, 149 Md.App. at 437–38, 816 A.2d 117 ("The grant of a motion to transfer is an immediately appealable final judgment, whereas the denial of such a motion is not."). And see *Wilde v. Swanson*, 314 Md. 80, 81, 548 A.2d 837 (1988); *Smith v. State Farm*, 169 Md.App. 286, 293, 900 A.2d 301 (2006).

■ The flip side of the coin, the principle that the denial of a requested transfer of venue is not immediately appealable, is attested by *Lennox v. Mull*, 89 Md.App. at 559–64, 598 A.2d 847 ("[T]he order denying appellant's petition for a change of venue is not immediately appealable."). Thus, for appealability purposes, venue issues and forum non conveniens issues are treated the same way. In either legal context, the grant of a change of venue is immediately appealable; but the denial of a change is not.

### A Threshold Requirement:

### A Motion For A Change of Venue

■ The opening words of Rule 2–237(c) set out the necessary condition precedent for a judge to transfer a case to another county on the ground of forum non conveniens: "On motion of any party, the court may...." Overruling the decision of this Court to the contrary in our *Simmons v. Urquhart, supra,* the Court of Appeals, in its *Urquhart v. Simmons, supra,* held squarely that a trial judge may not, *sua sponte,* transfer the trial of an action to another county on the ground of forum non conveniens. A motion for a transfer, filed by one of the parties and for some reason, is a necessary condition precedent for the court to order a transfer. The motion to transfer the case, however, may be a generic transfer motion. It need not be specifically framed as a motion to transfer on the ground of forum non conveniens. Nor need it be specifically framed as a motion objecting to improper venue under § 6–201. An undifferentiated foot in the exit door will suffice. There must, however, be some foot in the door, and it may not be the judge's foot alone. *Urquhart v. Simmons* explained:

[B]ecause *the express language of Md. Rule 2–327(c) requires that a party first make a motion prior to a case being transferred* on the grounds of *forum non conveniens, a trial court may not act on its own initiative in transferring a case under that rule.*

In the instant case, *there was a motion filed by the defendants to transfer this action* to Montgomery County. *Although defendants relied on §§ 6–201 and 6–202, rather than Md. Rule 2–327(c)* in their motion to transfer, we find that *defendants' motion to transfer was sufficient* to permit a transfer for *forum non conveniens* and thus, the trial court did not *sua sponte* transfer this action under Md. Rule 2–327(c).

339 Md. at 15, 660 A.2d 412 (emphasis supplied).

Rule 2–327(c) was the basis for the defendants' request. The defendants' motion prayed the following alternative relief:

*In the alternative, this case should be transferred to Baltimore County on the grounds of forum non conveniens* because all of the Defendants and a majority of the witnesses, if not all, are either employed, reside, or maintain a principal office in Baltimore County, and, furthermore, the cause of action arose exclusively in Baltimore County. Under these circumstances, *Baltimore County is the* only logical and *most convenient forum for all parties and witnesses.*

(Emphasis supplied).

### The Allocation of the Burden of Persuasion

At the hearing before Judge Russell, the initial burden was cast on the appellees as the proponents of the motion. As the Court of Appeals pointed out in *Odenton Development v. Lamy,* 320 Md. 33, 40, 575 A.2d 1235 (1990):

It is the moving party who has the burden of proving that the interests of justice would be best served by transferring the action.

In *Leung v. Nunes,* 354 Md. 217, 224, 729 A.2d 956 (1999), Judge Rodowsky explained that that allocation of the burden

of persuasion, in addition to following the general rule of being assigned to the moving party, also subserves the recognized prerogative of the plaintiff to select the forum.

> Proper regard for the plaintiff's choice of forum is the reason why "a motion to transfer [from the forum chosen by the plaintiff] should be granted only when the balance weighs strongly in favor of the moving party."

The conclusion in *Leung v. Nunes,* 354 Md. at 229, 729 A.2d 956, was that where the competing factors are in equipoise, the defendant to whom was allocated the burden had, by definition, failed to carry that burden and the resulting tie would, therefore, go to the plaintiff and the plaintiff's right to choose the forum.

> [A]t best, the balancing of factors produces an equipoise, so that the plaintiffs' choice of forum controls.

The defendants in this case carried that burden admirably and left nothing in equipoise. The county where the cause of action arose was Baltimore County. Perhaps the two most significant defendants, in terms of any hoped-for award, were Baltimore County institutions—the Baltimore County Board of Education and the Baltimore County Police Department. Their respective offices were in Baltimore County. Any institutional records or reports would have to come from Baltimore County. Thomas Evans, the former principal of Randallstown High School, both lived and worked in Baltimore County. Both police officers worked in Baltimore County. One of them also lived there; the other commuted down from Pennsylvania. Even one of the shooters, Matthew McCullough, lived in Baltimore County, and had been a student at Randallstown High School before being sent to Washington County for the next hundred years. Any additional witnesses who might be called would almost inevitably be from Baltimore County. There was clearly no equipoise.

■ Judge Russell properly allocated the burden of persuasion to the defendants and properly described what that burden embraced:

It is the moving party who has the burden of [showing that] the interest of justice would be best served by transferring this action. A motion should be transferred or granted, for forum non conveniens purposes, only when the balance weighs strongly in favor of the moving party.

### The Standard of Appellate Review

Once the ball is in play, the standard by which we assess Judge Russell's ultimate decision becomes the abuse of discretion standard. Judge Krauser was dead center on this in *Stidham v. Morris,* 161 Md.App. at 566, 870 A.2d 1285.

> *"We review a trial court's decision to transfer a case* to another venue, pursuant to [Maryland] Rule 2–327(c), *under an abuse of discretion standard."* "An abuse of discretion is said to occur where no reasonable person would take the view adopted by the trial court, or when the court acts without reference to any guiding rules or principles." "Accordingly, *when reviewing a motion to transfer, a reviewing court should be reluctant to substitute its judgment for that of the trial court."*

(Emphasis supplied). See also *Smith v. State Farm,* 169 Md.App. 286, 295–96, 900 A.2d 301 (2006). In *Wagner v. Wagner,* 109 Md.App. 1, 52, 674 A.2d 1, *cert. denied,* 343 Md. 334, 681 A.2d 69 (1996), Judge Cathell, writing for this Court, sounded the basic theme of appellate deference to the discretionary decision of the trial judge on whether to transfer an action.

> *The trial court enjoys wide discretion* in determining whether to transfer an action on the grounds of *forum non conveniens,* and *the reviewing court should be reluctant to substitute its judgment for that of the trial court.*

(Emphasis supplied).

In *Cobrand v. Adventist,* 149 Md.App. at 437, 816 A.2d 117, Judge Sharer stressed the deference that an appellate court owes to the discretionary decisions of a trial judge.

> "When determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, *a court is vested with wide discretion.*"

(Emphasis supplied).

In *Urquhart v. Simmons,* 339 Md. at 17, 660 A.2d 412, the Court of Appeals similarly observed:

> We have held that "[w]hen determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, a court is vested with wide discretion." *"The forum non conveniens determination is committed to the sound discretion of the trial court . . . [and] may be reversed only when there has been a clear abuse of discretion".*

(Emphasis supplied). See also *Odenton Development Company v. Lamy,* 320 Md. at 40, 575 A.2d 1235 ("When determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, a court is vested with wide discretion.").

As we apply the abuse of discretion standard to the decision of Judge Russell to transfer venue, *Cobrand v. Adventist,* 149 Md.App. at 445, 816 A.2d 117, sets out for us the appellate guideline:

> *"The exercise of a judge's discretion is presumed to be correct,* he is presumed to know the law, and is presumed to have performed his duties properly." Absent an indication from the record that the trial judge misapplied or misstated the applicable legal principles, *the presumption is sufficient for us to find no abuse of discretion.* Additionally, *a trial judge's failure to state each and every consideration or factor* in a particular applicable standard *does not,* absent more, *constitute an abuse of discretion,* so long as the record supports a reasonable conclusion that appropriate factors were taken into account in the exercise of discretion. (Emphasis supplied).

### The Plaintiff's Choice of Forum

Whenever the trial of a case is transferred from one venue to another on the ground of forum non conveniens, the self-evident effect is that other considerations have operated to override the plaintiff's choice of forum. That initial choice of forum by a plaintiff is an ever-present consideration in these transfer cases and is not lightly to be dismissed. As the Court of Appeals pointed out in *Urquhart v. Simmons*, 339 Md. at 18 n. 7, 660 A.2d 412, however, the plaintiff's choice of forum need not be articulated and evaluated all over again as a "factor" in the weighing process for the reason that it has already been factored into the burden of persuasion itself, casting upon the defendants a heavy burden of persuasion. Having thus already been figured into the weighing process, indeed actually configuring the weighing standard, it need not be counted a second and redundant time.

> We note that the Court of Special Appeals adopted from federal case law the additional factor of "proper regard for the plaintiff's choice of forum." *See Simmons v. Urquhart*, 101 Md.App. 85, 106, 643 A.2d 487, 497 (1994). This *factor, however, is not a separate element in the analysis to be employed* under *Odenton Development v. Lamy*, 320 Md. 33, 575 A.2d 1235 (1990) to determine if an action should be transferred under Md. Rule 2–327(c). Rather, *it is the reason why* "a motion to transfer* [from the forum chosen by the plaintiff] *should be granted only when the balance weighs strongly in favor of the moving party.*"

(Emphasis supplied). See also *Leung v. Nunes*, 354 Md. 217, 224–25, 729 A.2d 956 (1999); *Cobrand v. Adventist*, 149 Md. App. at 439–40, 816 A.2d 117.

A statement in the caselaw about the burden of persuasion's being a heavy one is a guideline for the trial judge and not a standard of appellate review. Once the trial judge enters into the balancing process, the discretion entrusted is extremely wide and the appellate deference owed is concomitantly wide. The Court of Appeals decision in *Urquhart v. Simmons* is a revealing case in point. Judge Chasa-

now's opinion strongly indicated that, had it been deciding the issue de novo, the Court of Appeals might well have decided not to transfer the case. The Court nonetheless deferred to the trial judge's discretion to decide otherwise.

> *Because a trial court enjoys wide discretion* in determining whether to transfer an action on the grounds of forum non conveniens, *we should* therefore *be reticent to simply substitute our judgment for that of the trial court.* It was within the trial court's discretion to conclude that the convenience of the parties and witnesses weighed strongly in favor of transferring the case to Montgomery County. We note, however, that *we may not have chosen to transfer this case* to Montgomery County *given the fact that the moving party has a strong burden to show that the case should be transferred* to another forum *and because Prince George's County and Montgomery County are adjoining counties. Nevertheless, we find that the trial judge did not abuse his discretion in determining that the present action should be transferred* to Montgomery County.

339 Md. at 19, 660 A.2d 412 (emphasis supplied). But see *Bittner v. Huth,* 162 Md.App. 745, 757–60, 876 A.2d 157 (2005).

Judge Russell acknowledged this consideration of the plaintiffs' choice of forum:

> Understanding it is the plaintiff who has the choice of forum ... the plaintiff's choice of forum is Baltimore City.

## Two Sets of Factors To Be Separately Weighed

Although most of the earlier cases dealing with forum non conveniens focused predominantly on the relative convenience of the respective fora for the witnesses and the parties, more recent caselaw has been increasingly sensitive to the additional consideration of the interest of justice. In *Cobrand v. Adventist,* 149 Md.App. at 438, 816 A.2d 117, Judge Sharer spoke of the binocular nature of the focus:

> Thus, there are *two basic factors to be considered* by the court in ruling on a motion to transfer: *convenience and the*

*interests of justice,* each with particularized sub-parts that have grown in the case law.

(Emphasis supplied).

In *Stidham v. Morris,* 161 Md.App. at 568, 870 A.2d 1285, Judge Krauser further pointed out that, in assessing the advisability of a requested transfer, there are two "overarching" areas of concern and that neither may be ignored.

> In deciding a motion to transfer, *we,* as do the federal courts, *consider two overarching factors: "convenience" and "the interests of justice". See Cobrand,* 149 Md.App. at 438, 816 A.2d 117. "[T]he 'convenience' factor requires a court to review the convenience of the parties and the witnesses." *Id.* at 438 n. 5, 816 A.2d 117. *"The 'interests of justice' factor requires a court to weigh both the private and public interests; the public interests being composed of 'systemic integrity and fairness.'"*

(Emphasis supplied).

Judge Russell gave appropriate consideration to both sets of factors.

> Now the next question I need to reach is one of the *forum non conveniens.* [I]n order to reach a decision, *the court must balance the convenience of the witnesses and those public interest factors in systemic integrity and fairness* in addition to private concerns come under the heading of the interest of justice.

(Emphasis supplied).

### Convenience of Witnesses and Parties

 Although "witnesses" is, generally speaking, a larger class than "parties," in this case there is a substantial overlap. Most of the parties would appear to be likely candidates to be witnesses as well. In terms of Baltimore City versus Baltimore County, the convenience of the two plaintiffs does not appear to tilt the scales significantly in either direction. The name plaintiff, Edna Payton–Henderson, the mother of the shooting victim, lists her address as Conyers, Georgia. The shooting victim himself, William J. Thomas, III, albeit former-

ly from Baltimore County, is currently a student at Morgan State University and lives at 1629 Northgate Road in the Northwood area of Baltimore City. In terms of distance, 1629 Northgate Road is roughly equidistant from the Towson Courthouse and the Clarence Mitchell Courthouse in downtown Baltimore. The difference would not amount to more than a dozen or so blocks. Access to Towson via Loch Raven Boulevard, Goucher Boulevard, and Joppa Road, moreover, would actually appear to be easier, and the availability and cost of parking in Towson would appear to tilt in the same direction. In any event, the convenience factor for the plaintiffs is essentially a "wash."

The two gunmen of May 7, 2004, are listed as defendants. They are both currently, and for a long and indefinite future, incarcerated in Washington County, and it is from Washington County that we must assess the logistical convenience of transporting them (and their guards) to the trial table. Giving both, however, the same interpretation as to the legal residence of a prisoner urged by the plaintiffs in the case of Tyrone Brown, one would be considered a resident of Baltimore City and the other a resident of Baltimore County, for another "dead heat."

For the rest of the defendants, by contrast, the convenience factor points decisively and overwhelmingly toward Baltimore County. The former principal of Randallstown High School, Thomas Evans, both lives and works in Baltimore County. The offices of the Baltimore County Board of Education are not only in Baltimore County but are right in Towson. The offices of the Baltimore County Police Department are not only in Baltimore County but are right in Towson. Officer Ricardo Hester both lives and works in Baltimore County. Officer Richard Barney works in Baltimore County but lives in York, Pennsylvania (which is closer to Baltimore County than it is to Baltimore City).

Once we move beyond the literal parties to other likely lay witnesses, the scales continue to tilt heavily toward Baltimore County. The witness list, almost unquestionably, would in-

clude teachers from Randallstown High School, other adminis-
trative personnel from Randallstown High School, students
from Randallstown High School, and, quite likely, other offi-
cers and supervisory personnel from the Baltimore County
Police Department. General safety procedures, moreover,
might well necessitate calling supervisory personnel from the
Baltimore County Board of Education. If there should be any
question about emergency medical teams responding to the
shooting scene, that would also involve Baltimore County
personnel.

In terms of the convenience of the parties and of the likely
witnesses, Judge Russell's decision to transfer the case from
Baltimore City to Baltimore County cannot conceivably be
deemed to have been an abuse of discretion.

### The Relative Convenience of Expert and Lay Witnesses

Although the plaintiffs supply no supporting detail and do
not further develop their argument, they do assert, in passing:

> The medical records supplied by the plaintiff clearly indicate
> that over twenty plaintiff's witnesses at various health care
> sites in Baltimore City who were witnesses and habitually
> engage in business in the city would be inconvenienced by
> traveling to Baltimore County.

Had the point been further developed and had some
factual predicate been established, the relative convenience
interests of lay and expert witnesses could be an interesting
wrinkle of forum non conveniens law. This Court has touched
on the subject in both *Cobrand v. Adventist,* 149 Md.App. at
435–36, 816 A.2d 117, and *Smith v. State Farm,* 169 Md.App.
at 301–02, 900 A.2d 301. In *Cobrand,* the appellants, objecting
to a transfer of venue, "contend[ed] that the circuit court
erred by considering only the convenience of prospective lay
witnesses and did not consider any other factors." 149 Md.
App. at 440, 816 A.2d 117. In *Smith v. State Farm,* the
appellant, challenging a transfer of venue, complained that the
convenience of "his expert witness," a Baltimore City doctor,

had not received proper consideration. 169 Md.App. at 292, 900 A.2d 301. This Court, building on *Cobrand,* observed:

The only allegation that Smith makes with respect to a Baltimore City connection is that he plans to call, as an expert witness, a doctor whose office is in Baltimore City. In *Cobrand v. Adventist,* we affirmed the decision of Prince George's County Circuit Judge William D. Missouri to order a transfer from his county to Montgomery County. We quoted at length from his ruling, with apparent approval. Part of Judge Missouri's analysis was:

I don't consider experts as being disadvantaged, regardless of where they have to travel. They're experts and they have chosen that as part of their profession, that testifying as experts in cases is something that is desirable and, obviously, is also necessary for the transaction of court business. But the experts have made their decision as to what they are going to do. It's the person who is not a "professional witness" that I am concerned about.

149 Md.App. at 435, 816 A.2d 117 (emphasis supplied). *Smith's allegation about his possible expert is entitled to some weight, but not much.*

169 Md.App. at 301–02, 900 A.2d 301 (emphasis supplied). In this case, however, the plaintiffs do not develop what might have been an interesting contention and it is not before us.

### The Interest of Justice Factor

Quite above and beyond any question of convenience to parties and witnesses is what *Odenton Development v. Lamy,* 320 Md. at 40, 575 A.2d 1235, referred to as "the interest of justice factor." It is a two-pronged factor consisting of both a private interest component and a public interest component. The private interest component concerns the efficacy of the trial process itself. It is deemed a "private interest" because it is concerned only with a particular case. In *Stidham v. Morris,* 161 Md.App. at 568, 870 A.2d 1285, Judge Krauser explained this private interest in the trial process itself:

Private interests include "[t]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

In myriad ways, the superiority of Baltimore County as the trial venue in that respect was compelling. The ready availability of records and of staff resources at the Randallstown High School, the Baltimore County Board of Education, and the Baltimore County Police Department was dispositive with respect to the "private interests" that form a part of the larger "interest of justice."

The other component of the "interest of justice" factor is what the caselaw denominates "the public interest." The phrase "public interest" essentially speaks for itself, as it embraces such broad citizen concerns as the county's road system, its educational system, its governmental integrity, its police protection, its crime problem, its fire protection, etc. Judge Krauser discussed the significance of this component in *Stidham v. Morris,* 161 Md.App. at 568–69, 870 A.2d 1285:

On the other hand, public interests include, among other things, considerations of court congestion, the burdens of jury duty, and local interest in the matter. "Jury duty," the Court of Appeals has stressed, "is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." And, as for "local interest," that Court has observed, "[t]here is a local interest in having localized controversies decided at home."

See also *Smith v. State Farm,* 169 Md.App. at 300–01, 900 A.2d 301. Niemeyer and Schuett, *Maryland Rules Commentary,* 216, has similarly noted:

Numerous other factors may also be considered, such as court trial calendars and the location of documents, witnesses, and property involved. Judge Russell's opinion properly gave weight to that public interest consideration.

The cause of action arose in the county. This tragedy occurred at Randallstown High School which is located in Baltimore County. There is, in this court's opinion, a high degree of local interest in Baltimore County.

When a fusillade of gunshots endangers dozens, if not hundreds, of students at a large Baltimore County high school, Baltimore County self-evidently has an intense interest in the outcome of the case. When the Baltimore County Board of Education and the Baltimore County Police Department are sued for negligence in permitting such a threat to high school students to have occurred, Baltimore County self-evidently has an intense interest in the outcome of the case. A possibly protracted trial involving numerous witnesses is a burden properly to be assumed by the Baltimore County court system and not one that should be foisted onto the strained court system of Baltimore City. There is no reason, moreover, why the cost and obligation of jury service should be cast upon the citizens of Baltimore City for the trial of a matter of more vital and immediate concern to the citizens of Baltimore County. The impeccably correct decision of Judge Russell is accordingly affirmed.

Because we are affirming the transfer of the case from Baltimore City to Baltimore County on the ground of forum non conveniens, the appellees' cross appeal, contending that they were also entitled to the transfer on the additional ground of Baltimore City's being an improper venue, is moot. A win is a win, and there is no need to run up the score.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**